No. 23-1978

In the

# United States Court of Appeals

## for the Sixth Circuit

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DEMARCUS LEARIOUS GREELY,

Defendant-Appellant.

On Appeal from the United States District Court
for the Western District of Michigan
Docket No. 1:22-CR-137
The Honorable Janet T. Neff

_____

## APPELLANT DEMARCUS GREELY'S BRIEF

_____

Sarah Riley Howard
Pinsky Smith, PC
146 Monroe Center St., NW – Suite 418
Grand Rapids, MI 49503
616/451-8496                          Dated:  February 22, 2024

# TABLE OF CONTENTS

Table of Authorities ................................................................ iii

Statement Requesting Oral Argument .................................. 1

Jurisdictional Statement ......................................................... 2

Statement of Issues for Review ............................................. 3

Statement of Facts .................................................................. 4

    I.     Introduction............................................................. 4

    II.    Course of Proceedings and Disposition Below ...................... 4

Summary of the Argument ..................................................... 6

Argument  ................................................................................ 10

    I.     **The district court correctly did not dispute whether the plain text of the Second Amendment covers the conduct at issue.** ...................................................................... 10

    II.    **The district court erred when it held that machineguns are "dangerous and unusual" weapons.** ..................................... 11

    III.   **The district court erred when it held the machinegun prohibition constitutional without any finding of a "historical tradition of prohibiting carrying of dangerous and unusual weapons like this kind.** ......................................... 19

Conclusion and Requested Relief ......................................... 22

Addendum - Designation of Relevant Dist. Ct. Documents.............. 24

i

Certificate of Compliance ....................................................................... 25

Certificate of Service…………………………………………………..26

# TABLE OF AUTHORITIES

Page

*United States v. Allen*, No. 22-cr-456, 2023 U.S. Dist. LEXIS 223378 (E.D. Pa. Dec. 15, 2023) ........................................................................ 21

*United States v. Berger*, No. 5:22-cr-00033, 2024 U.S. Dist. LEXIS 20259 (E.D. Pa. Feb. 5, 2024) ........................................................................................................ 21

*Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023), 217 L.Ed.2d 286 (U.S. 2023) & U.S. Sup. Ct. No. 23-1353. ....................................... 21

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2125 (2022). ............................................................................... Passim

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) .................................. 12

*United States v. Fisher*, No. 1:23-cr-00045-MR-WCM, 2024 U.S. Dist. LEXIS 25221 (W.D.N.C. Feb. 13, 2024). .............................................. 21

*Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015) ..... 15

*D.C. v. Heller*, 554 U.S. 570, 581 (2008) ............................................... 11

*United States v. Jones*, No. 1:23-cr-126-TFM, 2023 U.S. Dist. LEXIS 214669 (S.D. Ala. Dec. 3, 2023) ............................................................. 21

*United States v. Kittson*, No. 3:21-cr-00075-IM, 2023 U.S. Dist. LEXIS 136688 (D. Or. Aug. 7, 2023). ............................................................... 21

*Maloney v. Singas*, 351 F. Supp. 3d 222, 237–38 (E.D.N.Y. 2018) ....... 15

*United States v. Sturgeon*, No. 23-6-DLB-CJS-1, 2023 U.S. Dist. LEXIS 188936 (E.D. Ky. Oct. 20, 2023) ........................................................... 21

*United States v. Perez-Gallan*, 640 F. Supp. 3d 697, 698 (W.D. Tex. Nov. 10, 2022) .......................................................................................... 8, 9

*United States v. Price*, 635 F. Supp. 3d 455, 459-462 (S.D.W.Va. 2022) .......................................................................................................... 9

*United States v. Quiroz*, 629 F. Supp. 3d 511, 515-523 (W.D. Tex. Sept. 19, 2022) ............................................................................................ 9

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) ..................... 9, 13

*Range v. Attorney General United States of America*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc) ............................................................................ 8

*United States v. Williams*, No. 21-cr-00745, 2024 U.S. Dist. LEXIS 14170 (N.D. Ill. Jan. 26, 2024). ............................................................... 21

**Statutes**:

18 U.S.C. § 922(o) ............................................................................ passim

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to Sixth Circuit Rule 34(a), Defendant-Appellant Demarcus Greely respectfully requests that the Court grant oral argument in this appeal. This is an issue of first impression for this Circuit, particularly post-Bruen jurisprudence, which has entirely changed the Second Amendment landscape. The legal issue is sufficiently novel and important to particularly warrant oral argument.

# JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. On June 15, 2023, Mr. Greely pleaded guilty to possession of a machinegun pursuant to a conditional plea agreement permitting him to appeal the Court's order denying his motion to dismiss the indictment. (Conditional Plea Agmt, R. 266, Page ID # 979-986; Minutes of Plea Hrg., R. 269, Page ID # 991; Order Adopting R&R to Accept Guilty Plea, R. 291, Page ID # 1024.) On October 31, 2023, the district court entered a Judgment, sentencing Mr. Greely to 30 months of imprisonment.  (Judgment, R. 453, Page ID # 2354.) He timely appealed the Judgment on the same day. (Notice of Appeal, R. 456, Page ID # 2367.)

## STATEMENT OF ISSUES FOR REVIEW

I.  Whether the district court erred in holding that 18 U.S.C. § 922(o), barring possession of machineguns, is constitutional and does not run afoul of the Second Amendment jurisprudence in Bruen and its progeny.

Defendant-Appellant Greely answers: "Yes"

Plaintiff-Appellee United States answers: "No"

The district court answered: "No"

## STATEMENT OF FACTS

### I.    Introduction

The charges against Demarcus Greely — possession of a machinegun and conspiracy to possess and transfer machineguns — were (and are) facially unconstitutional. The statute under which Mr. Greely was charged and convicted, 18 U.S.C. § 922(o), violates the Second Amendment to the United States Constitution.

By criminalizing a law-abiding citizen's possession of a bearable arm, Section 922(o) criminalizes conduct protected by the plain text of the Second Amendment. Accordingly, it is the Government's burden to show that a machinegun ban falls within this nation's historical tradition of firearm regulation. The district court erred when it held that the Government could do so. Machineguns are neither "dangerous" nor "unusual" as those terms are used in the case law. Furthermore, this nation's historical firearm regulations apply only to the carrying— not the mere possession—of dangerous and unusual weapons. Accordingly, Section 922(o) violates the Second Amendment.

### II.    Course of Proceedings and Disposition Below

The United States obtained the Superseding Indictment from the

4

Grand Jury charging Mr. Greely with possession of a machinegun and conspiracy to possess and transfer machineguns on January 10, 2023. (Superseding Indictment, R. 30, Page ID # 113-141.)

Mr. Greely challenged the constitutionality of the charges under the Second Amendment. (Motion to Dismiss, R. 208, Page ID # 724; Brief in Support, R. 209, Page ID # 725-734.) The district court denied his pre-trial motion to dismiss. (Opinion & Order, R. 244, Page ID # 912-919.) Mr. Greely then entered a conditional guilty plea to the possession charge which preserved the legal issue for appeal to this Court. (Conditional Plea Agmt., R. 266, Page ID # 979-986; Order Adopting R&R to Accept Guilty Plea, R. 291, Page ID # 1024.) On October 31, 2023, the district court entered a Judgment, sentencing Mr. Greely to 30 months of imprisonment.  (Judgment, R. 453, Page ID # 2354-2360.)

# SUMMARY OF THE ARGUMENT

Except for governmental or "grandfathered" weapons, 18 U.S.C. § 922(o) makes it a crime to "possess" a machinegun:

(o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to—

(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect. 18 U.S.C. § 922(o).

The term "machinegun" is defined as a weapon that fires multiple shots "by a single function of the trigger." 18 U.S.C. § 921(a)(24); 26 U.S.C. § 5845(b). The district court erred when it held that this statute survives Second Amendment scrutiny.

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. "[T]he Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." *New York State Rifle & Pistol Ass'n,*

*Inc. v. Bruen*, 142 S. Ct. 2111, 2125 (2022). "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* In such a case, as here, the government bears the burden to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126.

To meet its burden to demonstrate that the regulation is constitutional, the government was required to identify not merely an analogous, but a "distinctly similar," historical regulation banning weapons that today classify as "machineguns." *Bruen*, 142 S. Ct. at 2131. Both the Government and the district court glossed over the sea change that *Bruen* created. Although *Bruen* involved public carry permits, its effects go far beyond its facts. In *Bruen*, the Supreme Court rejected the Second Amendment framework that the federal Courts of Appeals had developed. *Bruen*, 142 S. Ct. at 2126. As Justice Breyer noted in dissent, "That is unusual. We do not normally disrupt settled consensus among the Courts of Appeals, especially not when that consensus approach has been applied without issue for over a decade."

7

*Bruen*, 142 S. Ct. at 2175 (Breyer, J., dissenting). Thus, *Bruen*'s new history-only approach has broad ramifications beyond that case's facts.

As one district court has noted:

> Before *Bruen*, the Second Amendment looked like an abandoned cabin in the woods. A knot of vines, weeds, and roots, left unkempt for decades, crawling up the cabin's sides as if pulling it under the earth.
>
> Firearm regulations are that overgrowth. Starting with the Federal Firearms Act in 1938, laws were passed with little— if any—consideration given to their constitutionality. That is, until the Supreme Court intervened in *Bruen*.
>
> No longer can lower courts account for public policy interests, historical analysis being the only tool. But after growing unchecked for almost 100 years, today's tangle of gun laws has left lower courts with a gordian knot. And after engaging with this Nation's tradition of firearm regulations several times already, the Court's unanswered question is whether Bruen demands lower courts manicure the Second Amendment's landscape by scalpel or chainsaw.

*United States v. Perez-Gallan*, 640 F. Supp. 3d 697, 698 (W.D. Tex. Nov. 10, 2022) (also holding that § 922(g)(8) is unconstitutional).

See also *Range v. Attorney General United States of America*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc) (holding that felon-in-possession statutes are unconstitutional), cert. petition pending, No. 23-374.

Since *Bruen*, courts have begun to reconsider—and overturn—long upheld federal firearm statutes. Besides the Third Circuit in *Range*, likewise other courts have overturned provisions of 18 U.S.C § 922. This includes:

- § 922(g)(8), *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), case argued at S. Ct., No. 22-915 (Nov. 7, 2023).

- § 922(g)(8), *Perez-Gallan*, 640 F. Supp. 3d at 698;

- § 922(n), *United States v. Quiroz*, 629 F. Supp. 3d 511, 515-523 (W.D. Tex. Sept. 19, 2022) (illegal receipt of a firearm by a person under indictment); and

- § 922(k), *United States v. Price*, 635 F. Supp. 3d 455, 459-462 (S.D.W.Va. 2022) (possession of firearm with obliterated serial number).

Thus, any reliance on pre-*Bruen* caselaw is misplaced. Those cases have never conducted the robust historical analysis that *Bruen* now requires. The Government has also cited district court cases post-*Bruen* ostensibly applying *Bruen* and upholding § 922(o)'s constitutionality. (Gov't Resp, R. 214, PageID.756 n.4.) However, none of these can be considered persuasive either since none of them located a historical analog to the complete ban on machineguns.

9

One of the Government's arguments in the trial court was that machineguns are not protected by the Second Amendment because they are both "dangerous and unusual." To the extent that there is a factual dispute regarding whether machineguns are "unusual," and whether they are sufficiently "dangerous" so as to lose Second Amendment protection – since both must be met – the district court also erred for not scheduling an evidentiary hearing as Mr. Greely requested to see if the Government could meet its burden with presentation of historical evidence on an analog of a ban on machinegun arms. But the district court also erred when it found that the machineguns are dangerous and unusual.

## ARGUMENT

### I.    The district court correctly did not dispute whether the plain text of the Second Amendment covers the conduct at issue.

Mr. Greely is an "ordinary, law-abiding, adult citizen[.]" *Bruen*, 142 S. Ct. at 2134. Accordingly, he is "part of 'the people' whom the Second Amendment protects." *Id.* The district court correctly did not dispute that the plain text of the Second Amendment covers the prohibited conduct.

10

Machineguns are "arms" under the text of the Amendment. Arms are weapons, and that term includes all firearms. *D.C. v. Heller*, 554 U.S. 570, 581 (2008). Moreover, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582.

The charged conduct—possession of the weapon—falls under the plain meaning of "keep." "[T]he most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons.'" *Heller*, 554 U.S. at 582.

Accordingly, § 922(o) criminalizes conduct that falls under the plain text of the Second Amendment. Thus, the government bears the burden to show that § 922(o) falls within "this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. That is a burden the Government has not and cannot meet.

## II.    The district court erred when it held that machineguns are "dangerous and unusual" weapons.

The Government argued that § 922(o) is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627. However, reliance on pre-*Bruen* cases for analysis, as the Government and the district court did,

11

is unhelpful given the new Supreme Court jurisprudence. Moreover, a close examination demonstrates that a prohibition on "the carrying of 'dangerous and unusual weapons'" does not encompass possession of a machinegun.

In a post-*Heller* case, the Supreme Court analyzed whether stun guns were dangerous and unusual. *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam). In that case, "the Supreme Judicial Court of Massachusetts upheld a Massachusetts law prohibiting the possession of stun guns." *Id.* One of its rationales for doing so was that stun guns were dangerous and unusual. *Id.*

The Supreme Court rejected this rationale and reversed in a per curiam opinion. *Caetano*, 577 U.S. at 411. However, Justice Alito's concurrence—joined by Justice Thomas—provided more analysis. "As the per curiam opinion recognizes, this is a conjunctive test: A weapon may not be banned unless it is both dangerous and unusual." *Id.* at 417 (Alito, J., concurring) (emphasis in original).

When determining if stun guns are unusual, "the pertinent Second Amendment inquiry is whether stun guns are commonly possessed by law-abiding citizens for lawful purposes today." *Caetano*,

12

577 U.S. at 420 (emphasis in original). Because "'[h]undreds of thousands of Tasers and stun guns have been sold to private citizens,'" stun guns were not unusual. *Id.* (quoting *People v. Yanna*, 297 Mich. App. 137, 144 (2012)). Additionally, "the relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Id.* at 418.

This is an area of the law which is rapidly changing. In March 2023, the Fifth Circuit invalidated 18 U.S.C. § 922(g)(8), which prohibits possession of a firearm while under a domestic violence restraining order. *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), cert. pet. pending, No. 22-915. This question was argued at the Supreme Court in November 2023 and still awaits decision. Under *Bruen*, the question presented is no longer whether the law at issue furthers a laudable policy goal. The question now is whether there is a historical analog "distinctly similar" to the banned arms.

The same reasoning applies to machineguns. As of May 2021, there were 741,146 machineguns possessed by Americans—sufficiently law-abiding to have registered their machineguns with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). (Gov't Attachment 1

13

- U.S. Dep't of Justice, ATF, Firearms Commerce in the United States: Annual Statistical Update 2021, 15–16 (2021), R. 22-2, PageID.47-75.[1]) Even if the Government and the district court are correct that many of these are law enforcement-owned weapons, and that the number of civilian-owned machine guns is closer to 175,977 (Opinion, R. 244, Page ID # 918), this is insufficiently distinguishable from the "approximately 200,000 civilian[-]owned stun guns" that were enough to establish common use in *Caetano*. 577 U.S. at 420 (Alito, J., concurring). The Supreme Court never said that 200,000 was minimum for what is considered "common use." Given that the trial court was making fact findings upon which it relied, it was also obligated to provide the evidentiary hearing that Mr. Greely requested.

Moreover, this number represents only the machineguns that were grandfathered when Congress outlawed private possession of machineguns in 1986. See 18 U.S.C § 922(o)(2)(B); Pub. L. No. 99-308, sec. 102 (May 19, 1986). Thus, it significantly undercounts the number

---

[1] Some of the exhibits were filed before the Superseding Indictment, as the district court required original briefs addressing the Second Amendment issues to be re-filed after the Superseding Indictment was filed.

14

of machineguns Americans would lawfully possess, if Congress had not unconstitutionally banned them for the last 36 years. As Judge Easterbrook observed in *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), "it would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned." *Id.* at 409; accord *Maloney v. Singas*, 351 F. Supp. 3d 222, 237–38 (E.D.N.Y. 2018) (finding ownership number adequate to establish common use "especially given" the legal restrictions that had been imposed on ownership of the weapon).

*Bruen* confirms this reading. In that case, the Court stated that "the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" 142 S. Ct. at 2143 (quoting *Heller*, 554 U.S. at 627). Accordingly, "even if these colonial laws prohibited the carrying of handguns because they were considered 'dangerous and unusual weapons' in the 1690s, they provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today." *Id.*

The same is true of machineguns. Even if at some point in history they were dangerous and unusual weapons, they no longer fit within that category because they are in common use today.

The government argues that *Heller* established that machineguns are dangerous and unusual, and thus may be constitutionally regulated. However, the Supreme Court did not state, in *Heller* or elsewhere, that machineguns are "dangerous and unusual weapons." The Court's discussion of "dangerous and unusual weapons" was dictum in regarding a hypothetical argument that the weapons "most useful in military service— M–16 rifles and the like—may be banned" under the "dangerous and unusual" exception. This was illogical, according to this hypothetical argument, because if possession of such weapons were unprotected, the Second Amendment right would be "completely detached from the prefatory clause" (which refers to the need for a "well regulated Militia"). *Id.*

The Supreme Court explained that it was untroubled by this possibility, because the Second Amendment was designed to protect the people's right to keep and bear "the sorts of lawful weapons that they possessed at home"—which, in the founding era, were the weapons

citizens would have brought with them when reporting for militia duty. *Id.* The fact that "modern developments" may give rise to a disjunction between the types of weapons Americans keep at home for self-defense and the types of weapons useful in warfare cannot "change [the Court's] interpretation of the right." *Id.* at 627-28.

This dictum has no bearing on situations in which there is no disjunction between the types of weapons Americans keep at home and the types of weapons useful in warfare. The Court made plain that it was indifferent to any detachment between the right protected by the Second Amendment and the prefatory clause—but it did not suggest that the lack of such detachment would somehow conflict with its interpretation. Indeed, the lack of such detachment tends to harmonize the Second Amendment right with the prefatory clause, nullifying a possible objection to the Supreme Court's interpretation in *Heller*. And in the case of machineguns, there is no such detachment, because today machineguns are both commonly kept at home and useful in warfare.

It is true that the *Heller* Court stated: "Read in isolation, Miller's phrase 'part of ordinary military equipment' could mean that only those weapons useful in warfare are protected. That would be a startling

reading of the opinion, since it would mean that the National Firearms Act's restrictions on machineguns (not challenged in *Miller*) might be unconstitutional, machineguns being useful in warfare in 1939." 554 U.S. at 624.

However, *Heller* was rejecting the premise that the Second Amendment protects "only those weapons useful in warfare." *Heller*, 554 U.S. at 624. Thus, it would be surprising that individuals would have the right to possess machineguns, while not being able to possess weapons that were not useful in warfare. At the end of this paragraph, the Court affirmed that the touchstone of the Second Amendment is common use, stating "[w]e therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as shortbarreled shotguns." *Heller*, 554 U.S. at 625.

Whether machineguns are commonly possessed by law-abiding citizens for lawful purposes is a factual question—one which *Heller* did not consider. Additionally, the *Heller* Court noted that "since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field." *Id.* at

635. Furthermore, Justice Breyer noted that if "people buy machineguns to protect their homes, the Court will have to reverse course and find that the Second Amendment does, in fact, protect the individual self-defense-related right to possess a machinegun." *Id.* at 721 (Breyer, J., dissenting).

As noted earlier, the government's own statistics show that many law-abiding citizens possess machineguns for lawful purposes. Thus, machineguns are in common use, and do not constitute dangerous and unusual weapons. The Government's lower numbers of people using machineguns is not reliable under the exhibits of the parties. At the very least, Defendant Greely was entitled to an evidentiary hearing on this Motion.

III. **The district court erred when it held the machinegun prohibition constitutional without any finding of a "historical tradition of prohibiting carrying of dangerous and unusual weapons like this kind.**

Additionally, even if machineguns were "dangerous and unusual" weapons, § 922(o) would still fail to fall within "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. 570, at 627. This is because § 922(o) criminalizes the mere

possession of a machinegun, while the historical prohibition applies to the "the carrying of" dangerous and unusual weapons.

Moreover, in *Bruen*, the Court further clarified that the common-law offense regulating "dangerous and unusual weapons" did not consist of merely publicly carrying such weapons, but rather of "bearing arms to terrorize the people." *Bruen*, 142 S. Ct. at 2143; see also *id.* at 2145 (discussing 1833 Tennessee Supreme Court decision refusing to "attribute to the mere carrying of arms 'a necessarily consequent operation as terror to the people.'") (quoting *Simpson v. State*, 13 Tenn. 356, 360 (Tenn. 1833)). Thus, the common-law offense involving "dangerous and unusual weapons" applied to such conduct as making an "'affray'" "'with force and arms being arrayed in a warlike manner . . . to the great terror and disturbance'" of the public. *Id.* (quoting *Simpson*, 13 Tenn. at 358 (quoting indictment)). Because § 922(o) criminalizes the mere act of peacefully possessing a machinegun in one's home, it falls outside this tradition and is therefore unconstitutional on this basis as well.

It is true that multiple district courts have agreed with the trial court here in the intervening months. But similar to the district court

opinion in this matter, those decisions have also skipped looking for the required historical tradition of a similar prohibition. See *United States v. Fisher*, No. 1:23-cr-00045-MR-WCM, 2024 U.S. Dist. LEXIS 25221 (W.D.N.C. Feb. 13, 2024) (holding that machinegun prohibition is constitutional and collecting district court cases); *United States v. Berger*, No. 5:22-cr-00033, 2024 U.S. Dist. LEXIS 20259 (E.D. Pa. Feb. 5, 2024) (holding that machinegun prohibition is constitutional); *United States v. Williams*, No. 21-cr-00745, 2024 U.S. Dist. LEXIS 14170 (N.D. Ill. Jan. 26, 2024); *United States v. Allen*, No. 22-cr-456, 2023 U.S. Dist. LEXIS 223378 (E.D. Pa. Dec. 15, 2023) (same); *United States v. Jones*, No. 1:23-cr-126-TFM, 2023 U.S. Dist. LEXIS 214669 (S.D. Ala. Dec. 3, 2023); *United States v. Sturgeon*, No. 23-6-DLB-CJS-1, 2023 U.S. Dist. LEXIS 188936 (E.D. Ky. Oct. 20, 2023) (same); *United States v. Kittson*, No. 3:21-cr-00075-IM, 2023 U.S. Dist. LEXIS 136688 (D. Or. Aug. 7, 2023).

Similarly, the Seventh Circuit held that the Second Amendment does not bar restrictions on machineguns in a civil suit seeking, among other relief, a preliminary injunction in *Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023). In December 2023, the Supreme Court

denied a writ of injunction pending certiorari presented to Justice

Barrett, which she referred to the Court, and this matter is still

pending there on the petition for certiorari. *Nat'l Ass'n for Gun Rts. v.*

*City of Naperville*, 217 L.Ed.2d 286 (U.S. 2023) & U.S. Sup. Ct. No. 23-

1353. While this decision contained a slightly more robust historical

discussion, the examples specific to machineguns center around latter

20th century, not the time the Second Amendment was adopted. That

does not comport with *Bruen.* See *Bevis*, 85 F.4th 1201-1202. Moreover,

the proponents of the argument that the machinegun ban was

unconstitutional had the benefit of some discovery, which Defendant

Greely should have had.

## CONCLUSION AND REQUESTED RELIEF

Accordingly, Defendant requests that this Court **REVERSE** the

district court's ruling on Mr. Greely's Motion to Dismiss, **VACATE** the

Judgment, and **REMAND** for further proceedings.


Dated:  February 22, 2024          By:*/s/  Sarah R. Howard*
                                   Sarah Riley Howard
                                   PINSKY SMITH PC
                                   146 Monroe Center, NW, Suite 418
                                   Grand Rapids, MI 49503

(616) 451-8496
showard@pinskysmith.com
Attorneys for Demarcus Greely

# ADDENDUM --
# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry No. | Document Description | Page Number of Electronic Record |
| --- | --- | --- |
| R. 22-2 | Gov't Attachment 1 - U.S. Dep't of Justice, ATF, Firearms Commerce in the United States: Annual Statistical Update 2021, 15–16 (2021) | PageID.47-75 |
| R. 30 | Superseding Indictment | Page ID # 113-141 |
| R. 208 | Defendant's Motion to Dismiss | Page ID # 724 |
| R. 209 | Brief in Support of Defendant's Motion to Dismiss | Page ID # 725-734 |
| R. 214 | Government's Response in Opposition | Page ID # 750-763 |
| R. 227 | Reply in Support of Defendant's Motion | Page ID # 819-828 |
| R. 244 | Opinion & Order | Page ID # 912-919 |
| R. 266 | Conditional Plea Agreement | Page ID # 979-986 |
| R. 269 | Minutes of Plea Hearing | Page ID # 991 |
| R. 291 | Order Adopting R&R to Accept Guilty Plea | Page ID # 1024 |
| R. 453 | Judgment | Page ID # 2354-2360 |
| R. 456 | Notice of Appeal | Page ID # 2367 |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitations pursuant to Fed. R. App. P. 32(a)(7)(B). The foregoing brief contains words of 3,579 Century 14-point proportional type. The word processing software used to prepare this brief was Microsoft Word.

Dated:  February 22, 2024   By: */s/  Sarah R. Howard*
                                      Sarah Riley Howard
                                      PINSKY SMITH PC
                                      146 Monroe Center, NW, Suite 418
                                      Grand Rapids, MI 49503
                                      (616) 451-8496
                                      showard@pinskysmith.com
                                      Attorneys for Demarcus Greely

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she directed service of Defendant-Appellant Demarcus Greely's Appellant Brief electronically via the Sixth Circuit Court's e-filing system on February 22, 2024, to Plaintiff-Appellee United States of America via the email addresses of the following:

- Assistant United States Attorney Jonathan Roth, jonathan.roth@usdoj.gov

- Assistant United States Attorney Patrick Castle, patrick.castle@usdoj.gov


Dated:  February 22, 2024   By: /s/  Sarah R. Howard

                        Sarah Riley Howard
                        PINSKY SMITH, PC
                        146 Monroe Center, NW, Suite 418
                        Grand Rapids, MI 49503
                        (616) 451-8496
                        showard@pinskysmith.com
                        Attorneys for Demarcus Greely