No. 23-2050

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

TOREZ ZARON BURNETT

*Defendant-Appellant.*

## On Appeal from the United States District Court
## for the Western District of Michigan (Southern Division)

District Court Case No.41:22-cr-137-2
Honorable Janet T. Neff, United States District Judge

REPLY BRIEF OF DEFENDANT-APPELLANT

                                          KENNETH P. TABLEMAN

                                          KENNETH P. TABLEMAN, P.C.
                                          Attorney for Appellant
                                          71 Maryland Avenue, SE
                                          Grand Rapids, Michigan 49506-1819
                                          (616) 233-0455

TABLE OF CONTENTS

Page No.

TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES. . . . . . . . . . . iii

REPLY ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.    As applied to Burnett, the Second Amendment prohibits punishing him, as a marijuana user, for possessing a firearm. . . . . . . . . . . . . . . . 1

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES

Cases:

*District of Columbia v. Heller,* 554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . 1, 2

*New York States Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). . . . . . . . . . . 1, 2

*United States v. Akridge*, 62 F.4th 258 (6th Cir. 2023). . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Cabbage*, 91 F.4th, 1228 (6th Cir. 2024). . . . . . . . . . . . . . . . . . . 4

*United States v. Connelly*, Case No. 23-50312, 2024 U.S. App. LEXIS 21866 (5th Cir. August 28, 2024).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Olano*, 507 U.S. 725 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Rahimi*, 144 S. Ct. 1889 (2024). . . . . . . . . . . . . . . . . . . . . . . 1, 2

Statutes:

18 U.S.C. § 922(g)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

18 U.S.C. § 922(g)(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Other Authorities:

Fed. R. App. P. 32(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. App. P. 32(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. App. P. 32(a)(7)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. App. P. 32(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

REPLY ARGUMENT

I. As applied to Burnett, the Second Amendment prohibits punishing him, as a marijuana user, for possessing a firearm.

Since Burnett filed his opening brief the Supreme Court further explained how the lower courts should analyze Second Amendment claims after the Court's decision in *New York States Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). The Court took up a challenge to 18 U.S.C. § 922(g)(8)—a law that prohibits persons subject to a domestic violence restraining order from possessing firearms. The Court said that the lower courts should consider if the challenged regulation is consistent with the principles underpinning our regulatory tradition. Courts must consider why and how a regulation burdens the Second Amendment right to bear arms. *United States v. Rahimi*, 144 S. Ct. 1889, 1897–98 (2024).

The Court said:

> In *Bruen*, we directed courts to examine our "historical tradition of firearm regulation" to help delineate the contours of the right. Id., at 17. We explained that if a challenged regulation fits within that tradition, it is lawful under the Second Amendment. We also clarified that when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to "justify its regulation." Id., at 24.
>
> . . . [O]ur recent Second Amendment cases . . . were not meant to suggest a law trapped in amber. As we explained in *Heller*, [*District of Columbia v. Heller,* 554 U.S. 570 (2008)] for example, the reach of

> the Second Amendment is not limited only to those arms that were in existence at the founding. 554 U.S. at 582. Rather, it "extends prima facie, to all instruments that constitute bearable arms, even those that were not [yet] in existence." *Ibid.* By that same logic, the Second Amendment permits more than just those regulations identical to ones that could be found in 1791. Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers.
>
> As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. 597 U.S. at 26–31. A court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern circumstances." *Id.*, at 28, and n. 7. . . .
>
> Why and how the regulation burdens the right are central to his inquiry. *Id.*, at 29. . . . Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding. . . . The law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin." [*Id.*, at 30, and n. 7](emphasis deleted).

*United States v. Rahimi*, 144 S. Ct. at 1897–98 (citations omitted).

In its brief, the government says that prohibiting habitual marijuana users from possessing firearms satisfies these requirements, citing historical restrictions based on dangerousness, intoxication, and mental illness. (Gov't Brief, Document 28, pp. 77–94).

But the government's examples miss the mark. In a post-*Rahimi* case, the Fifth Circuit considered and rejected arguments that historical restrictions on

2

firearms possession based on dangerousness, intoxication, or mental illness applied to a marijuana user. Mental illness examples don't work because the historical laws restored the right to possess firearms to people who recovered from mental illness. In addition, marijuana use does not permanently impair users, unlike some forms of mental illness. *United States v. Connelly*, Case No. 23-50312, 2024 U.S. App. LEXIS 21866 at *14–15 (5th Cir. August 28, 2024).

Nor do any of the historical laws restricting firearm possession based on dangerousness match. At the founding governments disarmed classes of people who posed a risk to their existence, like the Loyalists, or religious dissenters, or others who were seen as potential insurrectionists. *Id.*, at *14–18. Marijuana users do not fit these categories.

Historical laws limiting the rights of alcoholics do not match either. The Founders did not disarm all alcoholics, just those who misused arms while drinking. *Id.*, at *21–23. The laws banned carrying firearms in public while intoxicated, firing a firearm during New Years's celebrations while intoxicated, or appearing for militia duty while intoxicated. They did not ban all possession by persons who habitually used alcohol. *Id.*, at *26.

Here, Burnett admitted he was a regular user of marijuana. There is even a picture of him displaying a rifle while apparently using marijuana. But possessing

a firearm in one's home while using marijuana is not the same as carrying a firearm in public while intoxicated, firing firearms while intoxicated during New Year's celebrations, or appearing for militia duty while intoxicated. *Id.*, at *21–22.

Moreover, there was no proof that Burnett was actually intoxicated or impaired by his use of marijuana. Just as a person who drinks is not necessarily intoxicated, a person who puffs on a joint is not necessarily dangerously high. Nor was there proof that Burnett carried firearms in public. Thus, as applied to him the sentencing enhancement for being a prohibited person under 18 U.S.C. § 922(g)(3) covered more conduct than its historical analogues. It violated Barnett's constitutional right to bear arms.

The government says Burnett can't complain that the Second Amendment bars the prohibited person enhancement assessed against him under the firearm guideline at sentencing because he invited the error. Gov't Brief, Document 28, pp. 72–74, *See United States v. Akridge*, 62 F.4th 258, 264 (6th Cir. 2023).

The doctrine of invited error applies when a defendant advocates for an outcome, then challenges it on appeal. But it applies to factual issues, not legal ones. *United States v. Cabbage*, 91 F.4th, 1228, 1231 (6th Cir. 2024). The parties can't stipulate to legal conclusions, because courts have an independent obligation

4

to get the law right. (*Id.*).

And, even if invited error applies to conclusions of law, the Court will review an invited error to prevent manifest injustice. *United States v. Akridge*, 62 F.4th at 263.

It is unjust to give a person a longer sentence based on a guideline enhancement that violates his right to bear arms under the Second Amendment. The Court should review Burnett's argument on the merits.[1]

However, since Burnett did not make this argument in the district court, he must overcome the barrier of plain-error review. That means he must show error that was plain or obvious. *United States v. Olano*, 507 U.S. at 732. At present the law is not clear. Neither this Court nor the Supreme Court have taken up as-applied challenges to 18 U.S.C. § 922(g)(3). Burnett makes the argument here in order to preserve it in case this Court or the Supreme Court address the issue.

---

[1] The government also argues that Burnett waived any objection to scoring him as a prohibited person under the guideline. Gov't Brief, Document 28, pp. 72–74. But no one mentioned the Second Amendment or any cases interpreting it and how it might apply to Burnett's conduct either in the objections to the presentence report or at the sentencing hearing. (Restricted Access Objection/Response to Presentence Report, R. 350, Page ID # not legible, PSR, R. 755, Page ID # 1640, Sentencing Tr., R. 508, Page ID # 2597). Without mention of the Second Amendment and how it might apply to Burnett it is hard to see how Burnett "intentionally relinquished or abandoned" a known claim. *See United States v. Olano*, 507 U.S. 725, 732–33 (1993).

CONCLUSION

For these reasons, and for the reasons set forth in his opening brief, the Court should vacate Burnett's sentence and remand the case for resentencing.

Dated: October 14, 2024　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/Kenneth P. Tableman
　　　　　　　　　　　　　　　　　　Kenneth P. Tableman
　　　　　　　　　　　　　　　　　　Attorney for Torez Zaron Burnett

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 1,715 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word Perfect (R) Office-Version X6, Version16.0.0.429 in 14 point Times New Roman font.

Dated: October 14, 2024         /s/Kenneth P. Tableman
                                Kenneth P. Tableman

CERTIFICATE OF SERVICE

I certify that on October 14, 2024, I served a copy of this document on:

John J. Schoettle, Esq.
Assistant United States Attorney
*Attorney for Plaintiff-Appellee*
john.schoettle@usdoj.gov

by filing with this Court's CM/ECF system.

                                /s/Kenneth P. Tableman
                                Kenneth P. Tableman