No. 23-1978

In the

# United States Court of Appeals

for the Sixth Circuit

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DEMARCUS LEARIOUS GREELY,

Defendant-Appellant.

On Appeal from the United States District Court
for the Western District of Michigan
Docket No. 1:22-CR-137
The Honorable Janet T. Neff

## APPELLANT DEMARCUS GREELY'S REPLY BRIEF

Sarah Riley Howard
Pinsky Smith, PC
146 Monroe Center St., NW – Suite 418
Grand Rapids, MI 49503
616/451-8496

Dated:  October 21, 2024

# TABLE OF CONTENTS

Table of Authorities ........................................................................... iii

Reply Argument ................................................................................ 10

    I.    **The district court correctly held the plain text of the Second Amendment covers the conduct at issue.** ................ 10

    II.   **The Government still fails to show the required "historical analogue" machineguns are "dangerous and unusual" weapons similar to other examples of historical regulation.** 11

    III.  **There is still no adequate finding of a "historical tradition of prohibiting carrying of dangerous and unusual weapons" like machineguns.** ................................................................... 19

Conclusion and Requested Relief ....................................................... 22

Addendum - Designation of Additional Relevant Dist. Ct. Documents ......................................................................................... 24

Certificate of Compliance .................................................................. 25

Certificate of Service……………………………………………………..26

# TABLE OF AUTHORITIES

<u>Page</u>

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2125 (2022). .................................................................................. Passim

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ................................. 3-5

*United States v. Cousar*, No. 23-10004-01-EFM, 2024 U.S. Dist. LEXIS 60393, at \*29-30 (D. Kan. Apr. 2, 2024) .................................................. 9

*United States v. Gailes*, No. 23-5928, ____ F.4th _____ (6th Cir. Oct. 10, 2024) ..................................................................................................... 3

*Hamblen v. United States*, 591 F.3d 471 (6th Cir. 2009) ....................... 2

*D.C. v. Heller*, 554 U.S. 570, 581 (2008). ............................................... 11

*Heyward v. Cooper*, 88 F.4th 648, 654 (6th Cir. 2023) ........................... 8

*United States v. Mitchell*, No. 1:24-cr-9, 2024 U.S. Dist. LEXIS 89736, at \*14-\*15 (N.D. Ohio May 20, 2024) ................................................. 9

*United States v. Rahimi*, 144 S. Ct. 1889, 1897-98, 1894 (2024) ........ 1-3

<u>Statutes</u>:

18 U.S.C. § 922(o) ..................................................................... passim

# REPLY ARGUMENT

## I. The district court correctly held the plain text of the Second Amendment covers the conduct at issue.

The Government has not seriously disputed that the plain text of the Second Amendment is implicated as to 18 U.S.C. § 922(o), the prohibition on possession of machineguns to which Mr. Greely pleaded guilty. Mr. Greely, who had no prior felony record, was also not convicted of the other charge here, which the Government agreed to dismiss. Finally, it is important to note that there was significant dispute at the sentencing stage regarding the Government's proofs of Mr. Greely's gang affiliation, despite the extensive discussion of this in the Government's opening brief to this Court.

Because the Second Amendment is implicated, it is the Government's burden to meet the remaining parts of the test laid out in *Bruen*. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022). See also *United States v. Rahimi*, 144 S. Ct. 1889, 1897-98, 1894 (2024) (also subjecting 18 U.S.C. § 922(g)(8) to the *Bruen* test but still holding it constitutional, which prohibits persons subject to

a domestic-violence restraining order from possessing firearms). That is a burden the Government has not met here.

II. **The Government still fails to show the required "historical analogue" machineguns are "dangerous and unusual" weapons similar to other examples of historical regulation.**

This Court recently clarified the types of historical evidence that we may rely upon when considering a Second Amendment challenge. *Rahimi*, 144 S. Ct. at 1902-03. While the Government need not identify a "historical twin" to the challenged regulation, the government must identify a "historical analogue." *Id.* The Government may rely on "relevantly similar" historical precursors even if they do not "precisely match" the regulation at issue. *Id.* at 1898 (citation omitted). "Why and how the regulation burdens the right [to bear arms] are central to this inquiry." *Id.*

Contrary to the Government's suggestion, *Heller* and *Hamblen* are not adequately helpful to the analysis now required to determine § 922(o)'s constitutionality after *Bruen*. (Gov't Br. at 26 [citing *Hamblen v. United States*, 591 F.3d 471 (6th Cir. 2009)].) This is true regardless of whether en banc panel would eventually be needed to "officially" overrule *Hamblen*. This Court decided *Hamblen* pre-*Bruen* prior to the

2

different framework required by our Supreme Court in *Bruen*, and the panel here should note that when deciding this matter.

In ruling that § 922(g)(8) survives the *Bruen* test, this Court focused its analysis on two statutory regimes: surety laws and "going armed" laws. *Rahimi*, 144 S. Ct. at 1899–1901. Surety laws were a "form of preventive justice," which required people suspected of "future misbehavior" to post a bond; if a person broke the peace, then that person would forfeit the bond. *Id.* at 1899–900 (citation omitted).

Going armed laws "punish[ed] those who had menaced others with firearms" by requiring such individuals to forfeit their arms and face imprisonment. *Rahimi*, 144 S. Ct. at 1900–01. A connection that these regimes had with domestic violence was that sureties could be demanded by one spouse against the other. See *id.* at 1900. Accord *United States v. Gailes*, No. 23-5928, ____ F.4th ____ (6th Cir. Oct. 10, 2024) (18 U.S.C. § 922(g)(9), prohibiting domestic violence misdemeanants from possessing firearms, is facially constitutional).

The Government fails to put enough stock in the guidance that a concurrence provided in *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam) to a per curiam opinion invalidating a ban on stun guns.

3

That case is much more factually similar to the one at bar. In that case, "the Supreme Judicial Court of Massachusetts upheld a Massachusetts law prohibiting the possession of stun guns." *Id.* One of its rationales for doing so was that stun guns were dangerous and unusual. *Id.*

The Supreme Court rejected this rationale and reversed in a per curiam opinion. *Caetano*, 577 U.S. at 411. However, Justice Alito's concurrence—joined by Justice Thomas—provided more analysis. "As the per curiam opinion recognizes, this is a conjunctive test: A weapon may not be banned unless it is both dangerous and unusual." *Id.* at 417 (Alito, J., concurring) (emphasis in original).

When determining if stun guns are unusual, "the pertinent Second Amendment inquiry is whether stun guns are commonly possessed by law-abiding citizens for lawful purposes today." *Caetano*, 577 U.S. at 420 (emphasis in original). Because "'[h]undreds of thousands of Tasers and stun guns have been sold to private citizens,'" stun guns were not unusual. *Id.* (quoting *People v. Yanna*, 297 Mich. App. 137, 144 (2012)). Additionally, "the relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Id.* at 418.

4

The Government fails to refute how that same reasoning should not apply to machineguns, nor provides any other historical analogue to regulating a machinegun-style weapon. As of May 2021, there were 741,146 machineguns possessed by Americans—sufficiently law-abiding to have registered their machineguns with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). (Gov't Attachment 1 - U.S. Dep't of Justice, ATF, Firearms Commerce in the United States: Annual Statistical Update 2021, 15–16 (2021), R. 22-2, PageID.47-75.[1]) Even if the Government and the district court are correct that many of these are law enforcement-owned weapons, and that the number of civilian-owned machine guns is closer to 175,977 (Opinion, R. 244, Page ID # 918), this is insufficiently distinguishable from the "approximately 200,000 civilian[-]owned stun guns" that were enough to establish common use in *Caetano*. 577 U.S. at 420 (Alito, J., concurring). The Supreme Court never said that 200,000 was minimum for what is considered "common use." Given that the trial court was making fact

---

[1] Some of the exhibits were filed before the Superseding Indictment, as the district court required original briefs addressing the Second Amendment issues to be re-filed after the Superseding Indictment was filed.

findings upon which it relied, the Government has not sufficiently refuted that the district court was obligated to provide the evidentiary hearing that Mr. Greely requested.

Moreover, this number represents only the machineguns that were grandfathered when Congress outlawed private possession of machineguns in 1986. See 18 U.S.C § 922(o)(2)(B); Pub. L. No. 99-308, sec. 102 (May 19, 1986). Thus, it significantly undercounts the number of machineguns Americans would lawfully possess, if Congress had not unconstitutionally banned them for the last 36 years. As Judge Easterbrook observed in *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), "it would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned." *Id.* at 409; accord *Maloney v. Singas*, 351 F. Supp. 3d 222, 237–38 (E.D.N.Y. 2018) (finding ownership number adequate to establish common use "especially given" the legal restrictions that had been imposed on ownership of the weapon).

The *Bruen* Court stated that "the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" 142 S.

6

Ct. at 2143 (quoting *Heller*, 554 U.S. at 627). Accordingly, "even if these colonial laws prohibited the carrying of handguns because they were considered 'dangerous and unusual weapons' in the 1690s, they provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today." *Id.*

Even if at some point in history machineguns were dangerous and unusual weapons, which the Government has not shown, machineguns no longer fit within that category because they are in sufficiently common use today, even though they have been regulated and thus the numbers restricted since the 1980s.

The Supreme Court did not state, in *Heller* or elsewhere, that machineguns are "dangerous and unusual weapons." The Court's discussion of "dangerous and unusual weapons" was dictum in regarding a hypothetical argument that the weapons "most useful in military service— M–16 rifles and the like—may be banned" under the "dangerous and unusual" exception. This was illogical, according to this hypothetical argument, because if possession of such weapons were unprotected, the Second Amendment right would be "completely

7

detached from the prefatory clause" (which refers to the need for a "well regulated Militia"). *Id.*

The government's own statistics show that many law-abiding citizens possess machineguns for lawful purposes. Thus, machineguns are in common use, and do not constitute dangerous and unusual weapons. The Government introduced a great deal of new historical discussion in this Court which it did not present in the district court. (E.g., Gov't Br. at 31-34.) This Court typically does not consider fact assertions and legal arguments which were not presented below. *Heyward v. Cooper*, 88 F.4th 648, 654 (6th Cir. 2023). At the very least, this further demonstrates that Defendant Greely was entitled to an evidentiary hearing on this, given this Court's confirmation that the Government has a burden to show a "historical analogue" to this regulation and the historical treatise recitation upon which the Government now relies in this Court.

### III. There is still no adequate finding of a "historical tradition of prohibiting carrying of dangerous and unusual weapons" like machineguns.

Finally, even if machineguns were "dangerous and unusual" weapons, § 922(o) would still fail to fall within "the historical tradition

of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. 570, at 627. This is because § 922(o) criminalizes the mere possession of a machinegun, while the historical prohibition applies to the "the carrying of" dangerous and unusual weapons. Mr. Greely was only convicted of possession in the case at bar.

It is true that new district courts have agreed with the trial court here in the intervening months since the Government was required to file its consolidated brief. But those decisions have also skipped looking for the required historical tradition of a similar prohibition. E.g., *United States v. Mitchell*, No. 1:24-cr-9, 2024 U.S. Dist. LEXIS 89736, at *14-*15 (N.D. Ohio May 20, 2024); *United States v. Cousar*, No. 23-10004-01-EFM, 2024 U.S. Dist. LEXIS 60393, at *29-30 (D. Kan. Apr. 2, 2024).

The only thing which Appellant Greely does agree with the Government is that this case is ripe for decision by this Court and for oral argument, given the new ground this matter is plowing.

## CONCLUSION AND REQUESTED RELIEF

Accordingly, for the reasons stated here and in his opening brief, Appellant requests that this Court **REVERSE** the district court's ruling

9

on Mr. Greely's Motion to Dismiss, **VACATE** the Judgment, and **REMAND** for further proceedings.

Dated: October 21, 2024      By:*/s/* Sarah R. Howard
                                                 Sarah Riley Howard
                                                 PINSKY SMITH PC
                                                 146 Monroe Center, NW, Suite 418
                                                 Grand Rapids, MI 49503
                                                 (616) 451-8496
                                                 showard@pinskysmith.com
                                                 Attorneys for Demarcus Greely

# ADDENDUM --
# DESIGNATION OF ADDITIONAL RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry No. | Document Description | Page Number of Electronic Record |
|---|---|---|
| R. 22-2 | Gov't Attachment 1 - U.S. Dep't of Justice, ATF, Firearms Commerce in the United States: Annual Statistical Update 2021, 15–16 (2021) | PageID.47-75 |
| R. 30 | Superseding Indictment | Page ID # 113-141 |
| R. 208 | Defendant's Motion to Dismiss | Page ID # 724 |
| R. 209 | Brief in Support of Defendant's Motion to Dismiss | Page ID # 725-734 |
| R. 214 | Government's Response in Opposition | Page ID # 750-763 |
| R. 227 | Reply in Support of Defendant's Motion | Page ID # 819-828 |
| R. 244 | Opinion & Order | Page ID # 912-919 |
| R. 266 | Conditional Plea Agreement | Page ID # 979-986 |
| R. 269 | Minutes of Plea Hearing | Page ID # 991 |
| R. 291 | Order Adopting R&R to Accept Guilty Plea | Page ID # 1024 |
| R. 404 | Defendant's Sentencing Br. | Page ID # 2062-2069 |
| R. 453 | Judgment | Page ID # 2354-2360 |
| R. 456 | Notice of Appeal | Page ID # 2367 |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the type-volume limitations pursuant to Fed. R. App. P. 32(a)(7)(B). The foregoing reply contains words of 1,730 Century 14-point proportional type. The word processing software used to prepare this brief was Microsoft Word.

Dated:  October 21, 2024     By:/s/  Sarah R. Howard
                                                Sarah Riley Howard
                                                PINSKY SMITH PC
                                                146 Monroe Center, NW, Suite 418
                                                Grand Rapids, MI 49503
                                                (616) 451-8496
                                                showard@pinskysmith.com
                                                Attorneys for Demarcus Greely

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she directed service of Defendant-Appellant Demarcus Greely's Appellant Brief electronically via the Sixth Circuit Court's e-filing system on October 21, 2024, to Plaintiff-Appellee United States of America via the email addresses of the following:

- Assistant United States Attorneys John J. Schoettle, Jonathan Roth, Patrick Castle

Dated: October 21, 2024　　By:/s/ Sarah R. Howard
　　　　　　　　　　　　　　　Sarah Riley Howard
　　　　　　　　　　　　　　　PINSKY SMITH, PC
　　　　　　　　　　　　　　　146 Monroe Center, NW, Suite 418
　　　　　　　　　　　　　　　Grand Rapids, MI 49503
　　　　　　　　　　　　　　　(616) 451-8496
　　　　　　　　　　　　　　　showard@pinskysmith.com
　　　　　　　　　　　　　　　Attorneys for Demarcus Greely