NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0317n.06

Nos. 23-1978/2042/2050

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

FILED
Jun 30, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT ) COURT FOR THE WESTERN ) DISTRICT OF MICHIGAN |
| DEMARCUS GREELY (23-1978); OMARION BRANCH (23-2042); TOREZ BURNETT (23-2050), | ) ) ) OPINION |
| Defendants-Appellants. | ) ) |

Before: CLAY, THAPAR, and READLER, Circuit Judges

**CLAY, Circuit Judge.** Defendants Demarcus Greely ("Greely"), Omarion Branch ("Branch"), and Torez Zaron Burnett ("Burnett") each challenge their sentences. Greely pled guilty to unlawful possession of a machinegun, in violation of 18 U.S.C. § 922(o). He now argues that Section 922(o) is unconstitutional. Branch pled guilty to unlawful possession of a firearm by a felon, in violation of 18 U.S.C § 922(g)(1). Similar to Greely, he argues that Section 922(g)(1) is unconstitutional. Burnett pled guilty to conspiracy to possess and transfer a machinegun, in violation of 18 U.S.C. §§ 371 and 922(o), and possession and transfer of a machinegun, in violation of 18 U.S.C. § 922(o). Burnett argues that Section 922(g)(3) is unconstitutional and that the district court's sentence was procedurally and substantively unreasonable.

For the reasons that follow, we **AFFIRM** the district court's judgment.

Nos. 23-1978/2042/2050, *United States v. Greely, et al.*

## I. BACKGROUND

### A. Greely

Greely is an affiliate of the My Brother's Keeper ("MBK") gang, located in Benton Harbor, Michigan. During a March 2022 Facebook conversation, Greely arranged to purchase an unserialized Polymer P80 pistol and magazine from fellow MBK gang member Burnett for $750. Police seized that firearm from Greely the following June during a traffic stop, where the officers noticed that the gun was equipped with a switch.[1] Greely's Facebook contained photos and videos of him holding the gun. And on the day officers seized the gun, Greely wrote on Facebook, "I Got Caught Wit A Switch Bro." Greely PSR, R. 389, Page ID #1865.

On October 4, 2022, a grand jury returned an indictment charging Greely with unlawful possession of a machine gun, in violation of 18 U.S.C. § 922(o). Three months later, on January 10, 2023, a grand jury returned a superseding indictment against Greely and nine co-defendants. The superseding indictment charged Greely with conspiring to possess and transfer machineguns, and possessing and transferring a machinegun, in violation of 18 U.S.C. §§ 371, 922(o). Greely then filed a motion to dismiss the charges, arguing that the charges were facially unconstitutional under the Second Amendment. He specifically argued that he had a right under the Second Amendment to possess a machinegun because "[m]achineguns are not 'dangerous and unusual' weapons." Greely Mot. Dismiss, R. 209, Page ID #728. The district court denied the motion, finding that only a limited universe of firearms are protected under the Second Amendment, and that universe does not include machineguns. The court went on to note that in *Hamblen v. United States*, 591 F.3d 471 (6th Cir. 2009), this Circuit already held that the Second Amendment does

---

[1] Switches are conversion devices that can be applied to a semiautomatic weapon to make the firearm fire multiple shots automatically with a single pull of a trigger. 26 U.S.C. § 5845(b) defines switches as machine guns.

not cover the unregistered use of machine guns. And even if *Hamblen* was not binding, the court found that machineguns were nevertheless dangerous and unusual weapons.

Greely then pled guilty to possessing and transferring a machinegun. The district court sentenced Greely to 30 months of imprisonment. Greely now challenges the district court's determination that 18 U.S.C. § 922(o) does not violate the Second Amendment.

### B. Branch

Branch has prior state felony convictions for selling a firearm to a felon, carrying a concealed weapon, and assault with a dangerous weapon. On May 22, 2022, officers in Benton Harbor responded to a home shooting. Officers arrived at the home and found a Ruger P95 pistol lying on the ground in front of the house, and recovered a phone and a fast-food receipt with Branch's name on it. A witness who lived at the residence told officers that Branch had arrived at the home to visit his girlfriend when bullets started to spray the home. Branch responded by returning fire and fleeing the residence. Officers later found Branch in Indiana and extradited him to Michigan. While in the custody of Michigan police, Branch admitted that he had obtained the Ruger P95 pistol to protect himself and his family.

A grand jury returned an indictment against Branch, charging him with unlawful possession of a firearm by a felon, in violation of 18 U.S.C § 922(g)(1). Branch then moved to dismiss the charge on the grounds that § 922(g)(1) violated his Second Amendment rights, arguing that felons cannot be deprived of their right to possess a weapon. The district court denied the motion, finding (1) that felons do not have Second Amendment protections, and (2) even if Second Amendment protections applied, "the felon-in-possession-prohibition is entirely consistent with 'this Nation's historical tradition of firearm regulation.'" Order, R. 243, Page ID #910 (quoting *New York State*

Nos. 23-1978/2042/2050, *United States v. Greely, et al.*

*Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022)). Branch then pled guilty to the felon-in-possession charge, and the district court sentenced him to 38 months' imprisonment.

### C. Burnett

Burnett is also a member of the MBK gang. Burnett worked with an individual named Quincy Bowman ("Bowman") to import switches from China, and then distributed the switches to fellow MBK members. Investigators searched Burnett's house in December 2021, where they found a switch, a rifle and pistol parts, two high-capacity drum magazines, and a pistol that was being prepared to be fitted with a switch. The investigators also intercepted two parcels from China in March 2022 that were addressed to Burnett and Bowman and contained ten switches. After intercepting the packages, case agents then began to research other parcels, and found that similar Chinese packages were delivered to Bowman.

Four months later, in July 2022, Burnett Facebook messaged fellow MBK member Demitrius Seuell ("Seuell") to "bring dem switches too so I can swap 'em." Burnett PSR, R. 355, Page ID #1626. Four days later, officers apprehended a gun and switch from Seuell. The following month, Burnett messaged a different individual about purchasing switches for a "war." Gov't Sent'g Mem., R. 359, Page ID #1695.

A grand jury charged Burnett with three counts of conspiracy to possess and transfer a machinegun, in violation of 18 U.S.C. §§ 371 and 922(o), and one count of possession and transfer of a machinegun, in violation of 18 U.S.C. § 922(o). Burnett pled guilty to one count of conspiracy to possess and transfer a machinegun and one count of possession and transfer of a machinegun. The presentence report recommended applying the USSG §2K2.1(a)(4)(B) sentence enhancement because Burnett "was a prohibited person at the time he committed the instant offense." Burnett PSR, R. 355, Page ID #1631. Burnett was specifically deemed a "prohibited person" because he

Nos. 23-1978/2042/2050, *United States v. Greely, et al.*

was "an unlawful user of or addicted to any controlled substance" under 18 U.S.C. § 922(g)(3). *Id.* at Page ID #1640.

Burnett initially objected to the presentence report's finding. He argued that § 922(g)(3) is unconstitutionally overbroad and vague, and that it also violates the Second Amendment. At his sentencing, Burnett withdrew this objection, and instead asked the court to issue a downward variance. He argued a downward variance was warranted because he (1) had accepted responsibility, (2) supported his mother, and (3) was young (21 years old). The district court denied the variance request on numerous grounds. First, it found that in evaluating the entire conspiracy as a whole, Burnett's actions were "pretty close to the top in seriousness because he was instrumental in the importation of the devices which were used to make numerous guns into machineguns." Sent'g Tr., R. 508, Page ID #2603. The court went on to note that "we have a community in which gun violence is a very, very serious problem," and Burnett's actions made the community's streets more dangerous by introducing "terrifying" weapons that "can shoot . . . somewhere at a thousand rounds a minute." *Id.* Second, in evaluating Burnett's history and characteristics, the court emphasized that Burnett participated in "the sophisticated part of this offense by importing these devices from China." *Id.* at Page ID #2603–04. The court further noted that it was "chilling . . . to consider that a young man at 21 years old starts off in his criminal involvement at the age of 21 with such a serious offense." *Id.* at Page ID #2604. Third, while Burnett argued his involvement was a "tragic mistake," the court stated that "it can't have been a mistake. It was well thought out and carried out—well carried out by the defendant and the others." *Id.* at Page ID #2605. The court ultimately imposed a sentence of 60 months of imprisonment.

## II. DISCUSSION

### A. Standard of Review

"We review a district court's decision regarding the constitutionality of a statute *de novo*." *United States v. Rose*, 522 F.3d 710, 716 (6th Cir. 2008). We review a sentence's substantive reasonableness for abuse of discretion. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). When brought by a defendant, "[a] claim that a sentence is substantively unreasonable is a claim that a sentence is too long. . . . Needful to say, this is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much." *Id.*

### B. Analysis

**1. Greely's Challenge to 18 U.S.C. § 922(o)**

The Second Amendment of the U.S. Constitution reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. The Supreme Court has clarified that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). This means that the Second Amendment does not provide "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* For example, the Court clarified that its caselaw should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* In *Bruen*, the Supreme Court stated that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 597 U.S. at 17. If the government attempts to regulate that conduct, it "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside

Nos. 23-1978/2042/2050, *United States v. Greely, et al.*

the Second Amendment's 'unqualified command.'" *Id.* To determine whether a regulation is consistent with historical tradition, "[a] court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (cleaned up). This means that "[t]he law must comport with the principles underlying the Second Amendment, but it need not be a dead ringer or a historical twin." *Id.* (cleaned up).

Greely challenges 18 U.S.C. § 922(o)'s constitutionality on its face. That statute states that "it shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1). The Supreme Court has already spoken on the issue of machine guns in *Heller*. In that case, the Court stated that it would be "startling" to hold "that the National Firearms Act's restrictions on machineguns . . . might be unconstitutional." *Heller*, 554 U.S. at 624. This is because the "Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625. The Court has not altered its position on machineguns in any post-*Heller* case, thus demonstrating *Heller*'s continuing applicability. *Heller*'s language, therefore, is strongly indicative that Section 922(o) is facially constitutional.

This Court itself has already spoken on the constitutionality of Section 922(o) in a manner that forecloses Greely's facial challenge. In *Hamblen*, we were directly confronted with the issue we presently face: whether Section 922(o) violates the Second Amendment. 591 F.3d at 473–74. This Court held that the Section 922(o) challenge "has been directly foreclosed by the Supreme Court, which specifically instructed in *Heller* that 'the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes.'" *Id.* at 474 (quoting *Heller*, 554 U.S. at 624). Greely vaguely argues that *Hamblen* is inapplicable because it was decided before the Supreme Court's decision in *Bruen*, which requires a "different framework" of

analysis. Greely Reply, ECF No. 33, 2–3. Yet *Hamblen* is a published case, and is therefore binding on this Court unless an en banc panel or the Supreme Court overturns it—neither of which has occurred. *See United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) ("One panel of this court may not overrule the decision of another panel; only the en banc court or the United States Supreme Court may overrule the prior panel."). Furthermore, there is nothing in the Supreme Court's *Bruen* progeny that would demonstrate that we must depart from *Hamblen* for purposes of disposing of Greely's facial challenge.

Greely also argues that the district court should have permitted an evidentiary hearing on this issue. He argues that the district court erred in denying his request for an evidentiary hearing to assess "whether machineguns are 'unusual,' and whether they are sufficiently 'dangerous' so as to lose Second Amendment protection." Greely Br., ECF No. 16, 10. Yet Greely's hearing request was not unconditional. Instead, he requested a hearing "[i]f the [c]ourt finds that there is a factual dispute." R. 209, Page ID #733; *see also id.* at Page ID #725 (requesting a hearing "[t]o the extent that there is a factual dispute regarding whether machineguns are 'unusual,' or whether they are sufficiently 'dangerous' so as to lose Second Amendment protection"). Nowhere in Greely's brief before this Court does he identify a factual dispute before the district court. He does not, for example, argue what specific facts were at issue and whether a hearing would have further clarified those facts. In fact, as the government points out, Greely specifically relied on "the government's own statistics" to make his argument before the district court. Greely Mot. Dismiss, R. 209, Page ID #732. Thus, the issue before the district court was not to develop a factual record. Instead, the issue was how to interpret unobjected facts to dispose of his facial challenge. That does not require an evidentiary hearing. *See Gonzales v. Galvin*, 151 F.3d 526 (6th Cir. 1998) ("Evidentiary hearings are not necessary where the parties' briefs clearly set forth the relevant facts and

arguments of a case such that a hearing would not add anything to the briefs, and where the court has sufficient evidence before it to make detailed factual findings.").

### 2. Branch's Challenge to 18 U.S.C. § 922(g)(1)

Branch brings a facial challenge to the constitutionality of 18 U.S.C. § 922(g)(1). That statute makes it unlawful for any individual "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. 18 U.S.C. § 922(g)(1).

The Supreme Court has already spoken on the issue of a felon's possession of firearms in *Heller*. In that case, the Court explicitly stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626. Several months after *Heller* was decided, this Court provided an even more explicit sanction of banning felon possession of firearms. In *United States v. Frazier*, the Court held that under *Heller*, Section 922(g)(1) does not violate the Second Amendment. 314 F. App'x 801, 807 (6th Cir. 2008). We later affirmed that holding in the published case of *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010). And we once again found that Section 922(g)(1) is constitutional in *United States v. Williams*, 113 F.4th 637, 662–63 (6th Cir. 2024). Importantly, *Williams* post-dates *Bruen* and applies the *Bruen* framework in upholding the statute's constitutionality. *See id.* at 645–661. Thus, even if *Bruen* and its progeny abrogated *Heller*, *Williams* still binds this Court.

There have been no developments in the case law to indicate that we must depart from *Williams*. No case law from the Supreme Court suggests that the felon-in-possession prohibition is unconstitutional. In fact, *Rahimi* appears to reaffirm *Heller*'s language on a felon's possession of firearms. The *Rahimi* Court approvingly noted that "*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home.

Nos. 23-1978/2042/2050, *United States v. Greely, et al.*

Indeed, *Heller* stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Rahimi*, 602 U.S. at 682 (quoting *Heller*, 554 U.S. at 626, 627 n. 26). And Branch does not even attempt to explain why *Williams* is not binding.

### 3. Burnett's Challenge to His Sentence

In his objection to the presentence report, Burnett challenged the constitutionality of 18 U.S.C. § 922(g)(3). That statute makes it unlawful for anyone who is a "user of or addicted to any controlled substance" to possess a firearm. 18 U.S.C. § 922(g)(3). At his sentencing hearing, however, Burnett withdrew his objection. This Court has repeatedly found that when a party withdraws its objection at sentencing, that issue is waived and may not be argued before the Court. *See, e.g.*, *United States v. Bradley*, 845 F. App'x 439, 442 (6th Cir. 2021); *United States v. Malone*, 646 F. App'x 454, 458 (6th Cir. 2016); *United States v. King*, 430 F. App'x 514, 517 (6th Cir. 2011). Accordingly, Burnett has failed to preserve his constitutional challenge to Section 922(g)(3).

Burnett also challenges the substantive reasonableness of his sentence. There is little merit to this challenge.[2] The sentencing hearing transcript demonstrates that the district court carefully weighed the sentencing factors and Defendant's mitigating circumstances. There is little to suggest that the 70-month sentence was excessive or that the district court placed too much weight on certain factors. Furthermore, the sentence fell within the Guidelines' range, and we have found

---

[2] The government argues that Defendant has failed to preserve this issue because his counsel did not object at sentencing. However, this Court has repeatedly held that a defendant "is not required to object to the substantive reasonableness of his sentence to preserve that issue for appeal." *United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009).

Nos. 23-1978/2042/2050, *United States v. Greely, et al.*

that sentences that fall within the advisory range are presumptively reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

Defendant attempts to argue that the sentence was not procedurally reasonable because the district court gave a "short explanation for the sentence" that did not adequately address the various concerns posed by Defendant. Appellant Br., ECF No. 16, 10. This is a mischaracterization of the district court's findings. The hearing transcript includes over three pages' worth of explanation of the sentence, in which the court clearly explained that it sentenced Defendant based on (1) the important role he played in the conspiracy, (2) the fact that that his actions brought dangerous weapons into the community, and (3) the deliberateness of his actions. Defendant further argues that the district court failed to account for the fact that Defendant's "actions were mistaken and tragic." Appellant Br., ECF No. 16, 11. Yet the district court's review gave ample reasons for why Defendant's actions were not a mistake. Most notably, the district court explained that this was a particularly sophisticated conspiracy, of which Defendant played a central role. That level of involvement in a highly complex scheme is anything but a "mistake." Therefore, the district court's sentence was not in error.

### III. CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.